# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47434-4-II |
| Respondent, | |
| v. | |
| DAVID ALAN VALDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — David Valdez appeals his convictions for one count of third degree assault and one count of resisting arrest.  He argues that (1) the trial court improperly commented on the evidence when it instructed the jury on assault, (2) an instruction on assault shifted the burden of proof to Valdez, (3) a police officer presented improper opinion testimony, (4) defense counsel was ineffective because he did not object to the allegedly improper testimony, and (5) a reasonable doubt instruction violated Valdez's due process rights.  We disagree and affirm his convictions.

## FACTS

Valdez was highly intoxicated.  He went to a gas station's convenience store to buy an alcoholic beverage, then fell asleep on a bench in the back of the store.  Employees at the gas station asked him to leave, but Valdez did not readily cooperate.  After several minutes, the employees called the police.

Police officers arrived, awakened Valdez, and asked him to leave. Valdez became verbally aggressive, and when officers tried to remove him from the store, he resisted. The officers escorted him out of the store. Outside the store, Valdez screamed vulgarities and flailed his arms. The officers placed Valdez under arrest for disorderly conduct. They attempted to handcuff Valdez, holding him near a police vehicle. Although Valdez continued to struggle and curse, the officers succeeded in handcuffing him.

Several officers began patting Valdez down. Officer Nicholas Woodard was on the left side of Valdez and behind him. Valdez was glaring at Officer Woodard and said to him: "[F***] you." 1A Verbatim Report of Proceedings (VRP) at 117. The officers then heard Valdez make a noise that sounded like he was intentionally gathering spit. Valdez turned his face up and toward Officer Woodard and spat upward towards him. Officer Woodard turned his face away, and Valdez's spit landed on Officer Woodard's ear. Officer Woodard was offended by being spat on.

The State charged Valdez with one count of third degree assault[1] against Officer Woodard and one count of resisting arrest.[2] During trial, officers testified to the above facts. Officer James Kelly testified that he was standing behind Valdez during the incident and saw it occur. The State asked him several questions about Valdez's opportunity to spit in directions other than at Officer Woodard. The State asked him to imitate the noise Valdez made before spitting, and Officer Kelly complied. After Officer Kelly imitated the noise, the State asked: "So

---

[1] RCW 9A.36.031(1)(g).

[2] RCW 9A.76.040(1).

he had to intentionally—he intentionally cleared his throat?" 1A VRP at 164. Officer Kelly agreed. The State continued: "And [he] turned and intentionally spit?" 1A VRP at 164. Officer Kelly agreed. Then, the State moved on to asking about Officer Woodard's reaction. At no time during this questioning did Valdez object.

Valdez testified in his defense that he felt the need to clear his throat after being awoken. He testified that he attempted to turn his head and spit forcefully on the ground, rather than hitting any of the officers near him. He testified that he did not intend to spit on Officer Woodard.

Valdez proposed a jury instruction based on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 35.50, at 547 (3d ed. 2008) (WPIC), which read: "An assault is an intentional touching of another person that is harmful or offensive . . . ," and which did not mention spitting. Clerk's Papers (CP) at 7. The State proposed a version of the same instruction that clarified that spitting can be an assault. Valdez argued that this instruction could constitute a comment on the evidence, misleading the jury into believing that spitting is an assault as a matter of law. The trial court reasoned that it was important to instruct the jury that spitting could constitute the "touching" required for assault, and that the instruction would permit Valdez to argue that he did not intend for his spit to land on Officer Woodard. 1B VRP at 228. Instruction 7 read: "An assault is an intentional touching of or spitting on another person, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or spitting is offensive if the touching or spitting would offend an ordinary person who is not unduly sensitive." CP at 17.

3

The jury was instructed that they were the sole judges of each witness's credibility. They were also instructed that the trial judge was not permitted to comment on the evidence, that he had attempted not to do so, and that they should disregard any personal opinions he may have stated about the evidence.

The jury instructions provided that the State had the burden of proving each element of the crimes beyond a reasonable doubt. Instruction 3, which defined reasonable doubt, followed WPIC 4.01 verbatim and read:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly[,] and carefully considering all of the evidence or lack of evidence. If, after[3] such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 13. The jury found Valdez guilty as charged. Valdez appeals.

ANALYSIS

I. COMMENT ON THE EVIDENCE

Valdez argues that instruction 7, which defined assault to include spitting, constituted an unconstitutional judicial comment on the evidence. We disagree.

A. *Standard of Review*

We review constitutional issues de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). Article IV, section 16 of the Washington State Constitution prohibits trial judges from commenting on the evidence presented at trial. *State v. Deal*, 128 Wn.2d 693, 703, 911

---

[3] The jury instruction as provided read "after such consideration"; whereas WPIC 4.01 reads "from such consideration." *Compare* CP at 13, *with* 11 WPIC 4.01, at 85. This negligible difference in wording appears to be a clerical error.

P.2d 996 (1996). Instead, the court's instructions "shall declare the law." *State v. Brush*, 183

Wn.2d 550, 557, 353 P.3d 213 (2015) (quoting CONST. art. IV, § 16). An impermissible

comment on the evidence is one that conveys the judge's attitude on the merits of the case or

permits the jury to infer whether the judge believed or disbelieved certain testimony. *Deal*, 128

Wn.2d at 703. This prohibition is designed "to prevent the jury from being unduly influenced by

the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *State v.*

*Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). But a jury instruction that does no more than

accurately state the law pertaining to an issue does not constitute an impermissible comment on

the evidence. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

B.      *No Comment on the Evidence*

Valdez was charged with third degree assault of a law enforcement officer, and the State

bore the burden of proving that Valdez "[a]ssault[ed] a law enforcement officer or other

employee of a law enforcement agency who was performing his or her duties at the time of the

assault" under circumstances not amounting to first or second degree assault. RCW

9A.36.031(1)(g). "Assault" is not defined in the criminal code and therefore, we turn to common

law for its definition. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). The common

law recognizes three definitions of assault: attempted battery, actual battery, and common law

assault. *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994).

As relevant to this case, a touching is an assault if it is intentional, offensive, and the

victim does not consent. *See State v. Shelby*, 85 Wn. App. 24, 28-29, 929 P.2d 489 (1997).

Washington courts have recognized that spitting can constitute an assault. *State v. Jackson*, 145

5

Wn. App. 814, 821, 187 P.3d 321 (2008); *State v. Humphries*, 21 Wn. App. 405, 409, 586 P.2d 130 (1978).

Instruction 7 provided in relevant part that an "assault is an intentional touching of or spitting on another person, that is harmful or offensive." CP at 17. Valdez argues that by adding the word "spitting" to the instruction, the trial court commented on the evidence. Br. of Appellant at 5. But as a matter of law, spitting can constitute an assault so long as it is intentional and offensive. *Jackson*, 145 Wn. App. at 821; *Humphries*, 21 Wn. App. at 409. Nothing in the language of instruction 7 suggested that the judge personally believed Valdez's spitting was an assault. Instead, instruction 7 correctly stated the law and permitted the jury to determine whether Valdez's spitting was intentional and offensive. Instruction 7 was not a comment on the evidence. *Woods*, 143 Wn.2d at 591.

## II. SHIFTING THE BURDEN OF PROOF

Valdez argues that instruction 7 relieved the State of its burden of proving that Valdez's spit could constitute an assault as a matter of law. We disagree.

We review jury instructions as a whole to see if the instructions properly inform the jury of the applicable law, are not misleading, and allow the parties to argue their theories of the case. *State v. Embry*, 171 Wn. App. 714, 756, 287 P.3d 648 (2012). We review the adequacy of jury instructions de novo. *Embry*, 171 Wn. App. at 756.

Here, as stated above, an assault is an intentional, offensive touching. *Shelby*, 85 Wn. App. at 28-29. Instruction 7 said that an assault is a touching or a spitting that is intentional and offensive. Thus, the jury instructions properly informed the jury of the applicable law. They

required the State to prove that the spitting was intentional and offensive. They did not require the State to prove that a spitting is a touching, because that has been established as a matter of law. *See Jackson*, 145 Wn. App. at 821; *Humphries*, 21 Wn. App. at 409. In other words, the fact that spitting is touching was not an issue of fact the State bore the burden of proving. Thus, we hold that instruction 7 did not shift the burden of proof to Valdez.

### III. LAY OPINION TESTIMONY

Valdez argues that Officer Kelly provided improper opinion testimony and invaded the province of the jury because he testified that Valdez "intentionally" spat on Officer Woodard. Br. of Appellant at 8. We disagree.

Lay witnesses may give opinions or inferences based upon rational perceptions that help the jury understand the witness's testimony and that are not based upon scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Impermissible opinion testimony about the defendant's guilt violates the defendant's constitutional right to a jury trial, which includes a right to an independent determination of the facts by the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). "Opinions on guilt are improper whether made directly or by inference." *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

Washington courts have held opinion testimony inadmissible in cases where the opinion evidence included explicit testimony about the defendant's guilt rather than the witness's factual observations. *See Quaale*, 182 Wn.2d at 201-02 (holding that a trooper's opinion about a driver's impairment in a driving under the influence case was inappropriate where it was based solely on the horizontal gaze nystagmus test and not his own observations of the defendant). But

Washington courts have upheld the admission of opinion testimony when the witnesses had strong factual bases supporting their opinions and those opinions did not include an explicit statement on an ultimate issue of fact. *See City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

In *Heatley*, Division One of this court held admissible an officer's testimony that Heatley was intoxicated where that testimony was based on the officer's observations of Heatley's physical appearance, conduct, and field sobriety tests. *Heatley*, 70 Wn. App. at 576, 579. The court in *Heatley* noted that an opinion that encompasses ultimate factual issues supporting the conclusion that the defendant is guilty does not necessarily make that testimony an improper opinion on guilt. *Heatley*, 70 Wn. App. at 579.

Here, like the officer in *Heatley*, Officer Kelly testified about his own perceptions based on his observations of Valdez's behavior. Officer Kelly testified that he saw and heard Valdez spit. Based on his observations, he imitated the noise Valdez made before spitting. The State asked him whether Valdez "intentionally cleared his throat" and "intentionally [spat]," and Officer Kelly agreed. 1A VRP at 164. From these statements in their context, it is clear that Officer Kelly was testifying about his own observations, rather than about Valdez's guilt. He testified about the actions he saw and heard, which enabled him to testify that Valdez appeared to deliberate and prepare to spit.

Moreover, Officer Kelly did not testify to the ultimate issue in the case, which was whether Valdez intended to spit *on* Officer Woodard. Instead, he testified that Valdez's act of spitting was intentional, which Valdez admitted. Officer Kelly expressed no opinion on

Valdez's intent for the spit to land on Officer Woodard. Officer Kelly did not testify to the ultimate issue of Valdez's guilt, and Valdez's argument fails.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Valdez argues that he received ineffective assistance of counsel because his counsel failed to object to Officer Kelley's opinion testimony. We disagree.

On an ineffective assistance of trial counsel claim, the defendant bears the burden of showing deficient performance and resulting prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

As stated above, we hold that Officer Kelly's testimony was permissible because it was based on his own observations and it did not encompass the ultimate factual issue in the case. Because the testimony was admissible, counsel was not deficient for failing to object to it. Therefore, Valdez's ineffective assistance of counsel claim fails. *Grier*, 171 Wn.2d at 32-33.

V. REASONABLE DOUBT INSTRUCTION

Valdez argues that instruction 3, which defines reasonable doubt, violated his right to a jury trial and shifted the burden of proof. We disagree.

"[J]ury instructions must define reasonable doubt and clearly communicate that the State carries the burden of proof." *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). Valdez's reasonable doubt jury instruction was taken verbatim from WPIC 4.01. *See* WPIC at 85. Our Supreme Court has repeatedly made clear that WPIC 4.01 is correct and that trial courts

must use it. *State v. Kalebaugh*, 183 Wn.2d 578, 582, 585-86, 355 P.3d 253 (2015) (holding that WPIC 4.01 is the correct instruction on reasonable doubt); *Bennett*, 161 Wn.2d at 318 (instructing trial courts "to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt" "until a better instruction is approved").

Here, because the trial court provided WPIC 4.01 as directed by the Supreme Court, it did not err. Division One of this court recently rejected arguments similar to Valdez's in *State v. Lizarraga*, 191 Wn. App. 530, 567, 364 P.3d 810 (2015). We do the same. Valdez's arguments are better directed to the Supreme Court.

We affirm Valdez's convictions.

## APPELLATE COSTS

Valdez asks us to waive appellate costs in the event the State prevails on appeal and seeks costs. We grant this request.

Under former RCW 10.73.160(1) (1995), an appellate court may order adult offenders to pay appellate costs. And under our RAP rules, the clerk or commissioner of this court "will" award costs on appeal to the State as the substantially prevailing party if the State provides a cost bill. RAP 14.2, 14.4. However, we may direct the commissioner or clerk not to award costs. RAP 14.2; *State v. Sinclair*, 192 Wn. App. 380, 389-90, 367 P.3d 612 (2016). Because of Valdez's indigent status, and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs. Former RCW 10.73.160(1).

No. 47434-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Maxa, J.